# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**AUSTIN JAY BURNS**                                                                                    **PLAINTIFF**

vs.                                           **5:17-CV-00223-JLH-JTR**

**KEDRICK R. AVERY**                                                                                  **DEFENDANT**

## PARTIAL RECOMMENDED DISPOSITION

The following Partial Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

1

## I. Introduction

While incarcerated in the Cummins Unit of the Arkansas Department of Correction ("ADC"), Plaintiff Austin Burns ("Burns") alleges that Defendant Lieutenant Kedrick R. Avery ("Lt. Avery") used excessive force against him in violation of his rights under the Eighth Amendment and § 1983. *Doc. 2, 6, 29.* [1]

In Lt. Avery's pending Motion for Summary Judgment and supporting brief, he argues that: (1) Burns has failed to present evidence of a *prima facie* case of excessive force; and (2) assuming the evidence will support a finding that Lt. Avery violated Burns' constitutional rights, Lt. Avery is entitled to qualified immunity.[2] *Docs. 35-37.* Burns has filed a Response, *Doc. 40*.

Before addressing the merits of the Motion, it is important to understand the facts relevant to Burns' claim that Lt. Avery used excessive force against him during a cell extraction on April 11, 2017.[3]

---

[1] Burns initially asserted other claims against other Defendants, all of which have now been dismissed. *Docs. 20, 28*. Thus, only his excessive force claim against Lt. Avery remains.

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

[3] The sources for these facts are: (1) Lt. Avery's Affidavit, *Doc. 37-1*; (2) Burns' Deposition testimony, *Doc 37-2*; and (3) a high resolution video of the incident, *Doc. 53* (sealed). The Court has carefully reviewed this video (which includes *audio* of everything that was

1.  On April 11, 2017, Burns was in "the hole," a two-man administrative segregation cell, in the East Building of the ADC's Cummins Unit.[4] Burns's cell mate was Darrick Phillips ("Phillips"). Affidavit of Lt. Avery ("Avery Aff."), *Doc. 37-1 at ¶ 6*; Deposition of Burns ("Burns Depo."), *Doc. 37-2, p. 13-14*.

2.  Phillips was angry over the way guards had treated one of his "brother" members of "New Aryan Empire." As a way of expressing his anger, Phillips began throwing urine on every officer who came down the hallway.[5] Burns Depo., *Doc. 37-2, pp. 13-15*; Avery Aff., *Doc. 37-1, ¶¶ 3, 7*.

3.  At approximately 2:20 p.m. on April 11, Phillips dashed Lt. Avery. After discussing the issue with his captain, the decision was made to assemble an extraction team to remove Burns and Phillips from their cell. Avery Aff., *Doc. 37-1, ¶¶ 6-8*.

4.  Wearing gas masks, Lt. Avery led the five-man extraction team back to Burns' and Phillip's cell. Avery Aff., *Doc. 37-1, ¶ 10*; Video, *Doc. 53* (sealed).

---

said between Lt. Avery and Burns) in evaluating the respective parties' sworn testimony about what took place during the incident.

[4] Burns was placed in administrative segregation for assaulting another inmate. Burns Depo., *Doc. 37-2, p. 14*.

[5] Burns denied participating in the dashing and ultimately was found *not guilty* of throwing urine on officers. However, he was found guilty of refusing a direct verbal order from Lt. Avery to catch the cuffs, which lead to the cell extraction. *Doc. 2, p. 16*; Burns Depo., *Doc. 37-2, p. 27*.

5.      When Lt. Avery arrived at the cell door, Burns and Phillips were on the floor in the far corner of the cell, holding up a sleeping mat to protect themselves from the chemical spray they knew Lt. Avery would use if they did not voluntarily obey his order to catch the cuffs. Burns Depo., *Doc. 37-2, at pp. 18, 30*. Lt. Avery issued three orders to "cuff up."[6] When neither inmate complied, Lt. Avery fired a single two to three second burst of MK-9 Vapor into the cell.[7] Based on the video, it does not appear Lt. Avery issued a warning before he discharged the MK-9.[8] Avery Aff., *Doc. 37-1, ¶¶ 11-14*; Video, *Doc. 53* (*sealed*).

---

[6] Burns testified that he did not comply with Lt. Avery's initial orders to submit to cuffs because Phillips previously had told him he was *not* going to comply. According to Burns, if he had gone alone to be handcuffed and Phillips refused, the cell would still be sprayed, but Burns would be handcuffed and unable to protect his eyes, nose and mouth from the vapor. Burns decided he was better off hiding behind the mattress, rather than standing in handcuffs in front of the cell door, with no ability to protect himself from the spray. Burns Depo., *Doc. 37-2, pp. 17-18, 22, 30*.

[7] The Material Safety Data Set for MK9 lists the following signs and symptoms of exposure: (1) irritation through all routes of entry; (2) dermatitis with repeated contact; and (3) nausea, vomiting and/or diarrhea if ingested. *See* http://www.pepperspraysetc.com/msds/MK-9-5099-First-Defense-Stream.pdf (accessed 2/4/2019).
  Safariland, the manufacturer, describes the product as "the next innovation in pepper spray with an intense concentration of major capsaicinoids that . . . inflames the mucous membranes, upper respiratory tract, and exposed skin resulting in shortness of breath along with pain, discomfort and a burning sensation." *See* https://www.officer.com/tactical/less-lethal/irritant-sprays/product/10770998/defense-technology-a-part-of-the-safariland-group-defense-technology-first-defense-mk9s-7-oc-vapor (accessed 2/4/2019).

[8] In his deposition, Burns stated that, because he "knew what was coming," he wrapped part of a sheet around his face, while hiding behind the mat to protect himself from the chemical spray. Burns Depo., *Doc. 37-2, at pp. 30, 34*. Under these circumstances, Lt. Avery's failure to issue a specific warning that he was going to spray them with MK-9 probably was unnecessary, although it may have violated ADC policy, which could require that a warning be given before chemical spray is used in a cell extraction.

6.     Lt. Avery then issued two orders to "step to the trap and cuff up." Without issuing *any warning* to Burns and Phillips that he intended to escalate his use of force, if they continued to disobey his orders to "cuff up," Lt. Avery threw one, or possibly two, stinger grenades into the cell.[9] In addition to producing two very loud explosions, the grenade(s) also appears to have released more chemicals into the cell, which can be seen filling with a white smoky vapor. Burns and Phillips can be heard coughing and screaming after the grenade(s) detonate. Avery Aff., *Doc. 37-1, ¶¶ 15-17*; Video, *Doc. 53* (*sealed*).

7.     Lt. Avery then orders them to "step to the trap and cuff up." Burns and Phillips immediately comply with that order. They walk to front of the cell and place their hands behind their backs. Both men are naked from the waist up and are wearing either boxers or pants and boxers. They appear to be shaken and disoriented by the explosions and their body language indicates they are ready to surrender, cuff up, and be removed from the chemically saturated cell. Video, *Doc. 53* (*sealed*).

8.     Instead of cuffing and removing the men from the cell, Lt. Avery repeatedly orders Burns and Phillips to "strip down." In immediate response to these

---

[9] According to Defense Technology, a stinger CS grenade is a "maximum effect device that delivers four stimuli for psychological and physiological effect: rubber pellets, light, sound, and "CS [chemical spray]." *See* http://www.defense-technology.com/products/tactical-devices/stinger-rubber-ball/stinger-cs-rubber-ball-grenade-1011580.html (accessed 2/4/2019).
    From the video, it is impossible to tell if Lt. Avery has one or two grenades in his hand. However, two loud explosions can be heard after he throws the grenade or grenades into the cell. If one grenade explodes twice he threw only one. However, if one grenade only has a single explosive charge, it would appear Lt. Avery threw two grenades into the cell.

orders, Burns and Phillips "get down" on their knees, in front of the cell door, lean forward with their faces on the floor, and place their hands behind their backs to be cuffed. Video, *Doc. 53* (*sealed*); Avery Aff., *Doc. 37-1, ¶¶ 17-18*.

9. During the incident, Lt. Avery is issuing orders through his gas mask, which makes them hard to hear and understand on the audio. Burns and Phillips had just been subjected to two very loud explosions inside a small cell and this further interfered with their ability to hear. From the video, it is clear Burns and Phillips are having difficulty understanding Lt. Avery's order to "strip down." Burns Depo., *Doc. 37-2, at p. 36*; Video, *Doc. 53* (*sealed*).

10. By responding to Lt. Avery's order to "strip down" by kneeling and putting their hands behind their backs, it appears both men believed Lt. Avery was ordering them to "get down," *not* "strip down." Another guard can be seen on the video approaching the open trap. He appears to reach inside the trap with the intention of cuffing Burns and Phillips. Lt. Avery pushes the guard away and resumes issuing his orders to "strip down." Video, *Doc. 53* (*sealed*).

11. In his deposition, Burns testified that: (1) he had difficulty hearing Lt. Avery's muffled orders through the gas mask; (2) he was "confused" by the explosion; and (3) and his ears were ringing, which compounded his difficulty in hearing Lt. Avery's orders. Burns Depo., *Doc. 37-2, pp. 18-19, 31-33, 36*.

6

12. With Burns and Phillips both kneeling directly in front of Lt. Avery, with their bare backs facing him and their hands behind their backs, he fires a *second burst* of MK-9, for two to three seconds. He once again gives *no warning* before he uses that force. Video, *Doc. 53* (*sealed*).

13. Unlike the first MK-9 burst, which Lt. Avery fired when Burns and Phillips were in the far corner of the cell hiding behind a mattress, Lt. Avery discharged the second burst at very close range, with both men kneeling approximately two feet directly in front of him. The spray appears to be directed at their naked backs. Video, *Doc. 53* (*sealed*).

14. According to Lt. Avery's Affidavit, he believed it was reasonable and necessary to fire the second burst of MK-9 to get the kneeling prisoners to "finally strip down," so he could determine if they had "anything dangerous" in their buttocks. Avery Aff., *Doc. 37-1*, ¶¶ 19-21; Video, *Doc. 53* (*sealed*). He does not specify in his Affidavit what he thought those "dangerous" items might be or explain the nature of the security risks the items might still pose if the prisoners' hands were cuffed behind their backs and they were removed from the cell still wearing their pants and boxers.

15. After being sprayed the second time, Burns and Phillips can be seen standing with their hands behind their backs, in front of the open trap, pleading to be handcuffed and removed from the cell. Both men are in obvious pain from the

second close range spraying, and they appear to be desperate to leave the chemically saturated cell.

16. The same guard once again approaches the trap with handcuffs and appears ready to cuff the prisoners. Lt. Avery once again pushes the guard away and continues to order the prisoners to "strip down." Burns and Phillips finally comprehend Lt. Avery's orders to "strip down" and they remove their boxers or pants and boxers. Video, *Doc. 53* (*sealed*).

17. With their naked buttocks directly in front of the open trap, Burns and Phillips have their hands behind their backs waiting to be cuffed. Instead of doing so, Lt. Avery begins to order them to "squat down." More seconds go by as the men struggle to understand what he is saying. Finally, both men understand the muffled order and perform a quick half-squat, which is sufficient to satisfy Lt. Avery's "security concerns."[10] Video, *Doc. 53* (*sealed*).

18. Instead of cuffing and removing Burns and Phillips from the cell, Lt. Avery now orders them to "put your boxes on," - - the same ones they had just been ordered to remove for "security" reasons. More seconds go by as the prisoners struggle to understand what Lt. Avery is saying. Finally, both men understand his order and put their boxes on. Video, *Doc. 53* (*sealed*).

---

[10] Neither man's buttocks were physically examined for "anything dangerous" before they were removed from the cell.

19. From the time Lt. Avery, without issuing any warning, throws the grenade(s) into the cell at the 1:21 second mark (which results in both prisoners immediately going to the cell door to surrender) and the time they are finally allowed to leave the cell in handcuffs, at the 3:45 second mark, Burns and Phillips are forced to remain in the chemically saturated cell for 2 minutes and 24 seconds. At the 1:51 second mark, Lt. Avery, without issuing any warning, sprays MK-9 on Burns and Phillips' naked backs from a distance of about two feet, while both men are on their knees in front of the cell door doing their best to surrender, catch the cuffs, and leave the cell. From the 1:21 mark forward, Burns and Phillips can be seen and heard choking and gagging inside the cell. After they are sprayed with MK-9 at close range on their bare backs, beginning at the 1:51 second mark, they appear to be in great pain and having considerable difficulty breathing. Finally, at the 3:45 second mark, Lt. Avery allows them to be cuffed and removed from the cell. Video, *Doc. 53* (*sealed*).

20. The video ends with Burns and Phillips being escorted from the cell in handcuffs and taken to separate showers for decontamination. Video, *Doc. 53* (*sealed*); Avery Aff., *Doc. 37-1, ¶ 24*.

21. Burns testified that, as a result of the second close range spraying, he suffered chemical burns on his back that caused him intense pain for three days. He

also testified that, since the incident, his personality has changed, and he is now a "real nervous type person." Burns Depo., *Doc. 37-2, p. 19-20*.

## II. Discussion

To prevail on his excessive force claim, Burns must prove that Avery used force "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The relevant factors that must be considered when making this determination are: (a) the objective need for force; (b) the relationship between the need and the amount of force used; (c) the threat reasonably perceived by Lt. Avery; (d) any efforts by Lt. Avery to temper the severity of his forceful response; and (e) the extent of Burns's injuries. *See Ward v. Smith*, 844 F.3d 717, 721-22 (8th Cir. 2016); *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008); *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002).

Additionally, in cases involving the use of chemical agents, the Eighth Circuit has identified a number of other specific factors that should be evaluated in considering such claims: (1) was a warning given before the spray was used; (2) was there a legitimate purpose for using the spray; (3) was unnecessary "super-soaker" quantities of the chemical used; (4) was the prisoner allowed to wash off the painful chemical; and (5) was any physical force used in conjunction with the use of

the chemical agent. *See Burns v. Eaton*, 752 F.3d 1136, 1139-40 (8th Cir. 2014) (summarizing cases).

### A. The Facts, Viewed In a Light Most Favorable to Burns, Are Sufficient To Establish a Prime Facie Case of Excessive Force[11]

First, immediately after Lt. Avery threw the grenade(s) into the cell, both Burns and Phillips walk to the front of the cell to surrender, and get down on their knees, with their hands behind their backs, signaling to the guards they are willing to be handcuffed and removed from their chemically saturated cell. Video, *Doc. 53* (*sealed*). Arguably, at that point, the incident was over, no further use of force was necessary, and Lt. Avery should have allowed the other guards to handcuff and remove Burns and Phillips from the cell (as one guard repeatedly tried to do, but was thwarted by Lt. Avery).

Second, shortly after the incident, Lt. Avery wrote a Major Disciplinary that described what took place during the incident and the disciplinary charges he was filing against Burns and Phillips. *Doc. 2, pp. 15-16.*[12] In the Major Disciplinary,

---

[11] The summary judgment standard requires the Court to "view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party." *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006) (omitting citation and internal quotations).

[12] Avery writes:
> Once at the cell I observed both inmates in the left corner of the cell hiding behind a state issued mat. At that time I Lt Avery gave both inmates a direct order to step to the trap one at a time and submit to handcuffs but neither inmate complied. Both Inmates were given two more direct orders to step to the trap one at a time and submit to handcuffs but neither Inmate complied and refused all three direct orders. I Lt Avery then administered a burst of MK-9 Vapor . . . in to the cell.

11

Lt. Avery makes two untrue statement of facts: (1) "[A]fter they was constantly given direct orders to step to the trap . . . *I Lt. Avery then advised both inmates that if they didn't comply a stinger grenade would be used*;" and (2) I "threw a stinger grenade . . . into the cell in order to get both inmates to comply. *Seconds later*, Inmate A. Burns step to the trap and submitted to being handcuffed and then Inmate D. Phillips step to the trap and submitted to being handcuffed." *Id. at pp. 15-16* (emphasis added).

The video makes it clear that Lt. Avery did *not* warn the prisoners "if they didn't comply with [his orders to cuff up] a stinger grenade would be used." He simply tossed the grenade(s) into the cell, without issuing any warning.

Similarly, minutes – *not* "seconds" – elapsed between the time the grenade(s) exploded and Burns and Phillips were finally handcuffed and removed from the cell.

Finally, *Lt. Avery mentions nothing in the Major Disciplinary about:* (1) the second burst of MK-9 spray that he discharged over the bare backs of Burns and Phillips as they kneeled in front of him at a range of about two feet; and (2) his

---

Moments later Both Inmates remained behind the mat and still refused to step to the trap and submit to handcuffs after they was constantly given direct orders to step to the trap. I Lt Avery then advised both Inmates that if they didn't comply a stinger grenade would be used but neither Inmate complied. I Lt Avery threw a stinger grenade . . . into the cell in order to get both inmates to comply. Seconds later Inmate Burns step to the trap and submitted to being handcuffed and then Inmate D. Phillips step to the trap and submitted to being handcuffed. The door was opened and both Inmates was removed from the cell one at a time and placed in separate showers for decontamination.

Major Disciplinary, *Doc. 2, pp. 15-16.*

decision to *delay handcuffing and removing the prisoners from the chemically saturated cell* for: (a) two minutes and twenty-four seconds after the grenade(s) exploded; and (b) almost two full minutes after he discharged the second burst of MK-9.

Only a jury can resolve the many disputed questions of fact arising from: (1) the nature, duration, and extent of the force Lt. Avery used against Burns during the cell extraction and whether it was reasonable and necessary; and (2) his motivation or reason for writing a Major Disciplinary that materially misrepresented the nature, extent, and duration of the force he used during the incident.

Finally, it is undisputed that Phillips dashed Lt. Avery with urine only a short time before the cell extraction. This raises still more questions of fact surrounding Lt. Avery's reasons and motivations for his second use of MK-9, his long delay in removing the two prisoners from their cell, and whether his actions were in retaliation for the earlier dashing. Of course, only a jury can resolve those questions of fact, along with the accompanying credibility issues associated with the testimony of Lt. Avery, Burns, Phillips, and the other witnesses. *See Montoya v. City of Flandreau,* 669 F.3d 867, 872 (8th Cir. 2012) (explaining that, in an excessive force case, it is not the court's "function to remove the credibility assessment from the jury").

The jury's ultimate verdict in this case is difficult to predict and could be decided in favor of either Burns or Lt. Avery, depending on how it evaluates their credibility. However, at this stage in the case, when the Court must view the facts in a light most favorable to Burns, there are many material issues of disputed fact that prevent the Court from granting Lt. Avery's request for summary judgment.

Accordingly, Lt. Avery's Motion for Summary Judgment, based on Burns' alleged failure to present sufficient evidence of a *prima facie* case of excessive force, should be denied.

### B. Lt. Avery Is Not Entitled To Qualified Immunity

Alternatively, Lt. Avery argues he is entitled to qualified immunity.[13] To overcome a defense of qualified immunity, Burns must show that: (1) the supported facts, viewed in the light most favorable to him, demonstrate that Lt. Avery's conduct violated a constitutional or statutory right; and (2) the constitutional right Lt. Avery violated was clearly established at the time of the incident on April 11, 2017. *Id*. In applying this standard, the Eighth Circuit has cautioned that "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright

---

[13] Qualified immunity protects government officials from liability for monetary damages in a § 1983 action unless, at the time of alleged violation, his or her conduct violated a clearly established federal statutory or constitutional right of which a reasonable person would have known. *Ashcroft v Al-Kidd*, 131 S. Ct. 2074, 2084 (2011); *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009).

lines." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2011); *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007).

In April of 2017, it was clearly established that: (1) "force may be justified to make an inmate comply with a lawful prison regulation or order, but *only if the inmate's noncompliance also poses a threat to other persons or to prison security*."; *and* (2) "the law was clearly established that correctional officers do not have a blank check to use force whenever a prisoner is being difficult." *Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002) (omitting citations) (emphasis added).

Viewing the facts and all reasonable inferences drawn from them, in a light most favorable to Burns, a reasonable jury could find that Lt. Avery's second application of MK-9 and his subsequent delay in removing Burns from the cell violated Burns' Eighth Amendment right to be free from excessive force and constituted the infliction of "unnecessary and wanton pain." *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2008) ("An application of pepper spray when an inmate is being compliant can provide a basis for an Eighth Amendment claim."). Furthermore, on April 11, 2017, the law was clearly established that prison officials could not use excessive force against prisoners. *Walker v. Bowersox*, 526 F.3d 1186 (8th Cir. 2008) (jury question existed as to whether officer's use of pepper spray was reasonable and in good faith); *Johnson v. Blaukat*, *supra*.

Accordingly, Lt. Avery's Motion for Summary Judgment, based on qualified immunity, should be denied.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendant Avery's Motion for Summary Judgment *(Doc. 35)* be DENIED.

2. Plaintiff Burns be permitted to proceed to a jury trial with his excessive force claim against Defendant Avery in his individual capacity.

Dated this 13th day of February, 2019.

_____
UNITED STATES MAGISTRATE JUDGE